In re Delano D. SINCHAK, aka Del Sinchak, fdba Dusi Music, Debtor.

PEAVEY ELECTRONICS CORPORATION, Successor In Interest To Chrysler First Diversified Credit, Inc., Plaintiff,

v.

Delano D. SINCHAK, aka Del Sinchak, fdba Dusi Music, Defendant.

Bankruptcy No. B88–00938–Y.
Adv. No. 88–0078.

United States Bankruptcy Court, N.D. Ohio.

Jan. 9, 1990.

Frederick S. Coombs, III, Harrington, Huxley & Smith, Youngstown, Ohio, for Peavey Electronics Corp.

Robert J. Kalafut, Youngstown, Ohio, for Delano D. Sinchak.

## MEMORANDUM OPINION

WILLIAM T. BODOH, Bankruptcy Judge.

This matter is before the Court on the submission of cross motions for summary judgment by both the Plaintiff and Defendant in this adversary proceeding. For the reasons stated below, summary judgment is granted in favor of the Plaintiff, and the debt owed to the Plaintiff of Eighteen Thousand, Five Hundred Seventy & 58/100 Dollars ($18,570.58), plus interest from July 18, 1988, is found to be an exception to discharge under 11 U.S.C. Sec. 523(a)(4).

### FACTS

The following facts are contained in a Joint Stipulation of Facts submitted by the parties and filed with this Court on October 6, 1989. The Debtor filed his Petition for Relief under 11 U.S.C. Chapter 7 on July 18, 1988. Prior to the filing, the Debtor operated a retail music business as a proprietorship. In 1986, the Debtor executed a "floor plan" financing arrangement with CHRYSLER FIRST DIVERSIFIED CREDIT, INC. PEAVEY ELECTRONICS COR-

PORATION, a manufacturer of various electronic musical instruments and equipment sold by the Debtor, is the successor to CHRYSLER under the Security Agreement and in this adversary proceeding. The Security Agreement provided that CHRYSLER/PEAVEY ("the Creditor") would hold a perfected security interest in all of the PEAVEY merchandise in the Debtor's inventory, including after-acquired property. The merchandise could remain on the Debtor's floor for three (3) months with no amount due the Creditor. If the goods remained unsold after three (3) months, the Debtor would pay the Creditor ten percent (10%) of the wholesale price per month for each additional month the goods remained unsold. When an item was sold, during the first three (3) months or otherwise, the Debtor was obligated to pay the Creditor the outstanding balance of the wholesale price from the proceeds of sale. In order to determine which items had been sold, the Creditor made monthly inventory checks at the Debtor's place of business. For these monthly checks, the Creditor used an inventory list which did not include items for which the wholesale price had been fully paid by the ten percent (10%) per month payments.

Because of this payment method, the Debtor at any one time would have in inventory items for which the inventory price had not been paid, items for which the inventory price had been partially paid, and items for which the inventory price had been fully paid. Because this last category was disregarded in the Creditor's inventory checks, the Debtor was able to place inventory tags from items not fully paid for but which had been sold on to items in inventory which had been fully paid for and thus were not on the inventory check list. By switching tags, the Debtor created the appearance that certain items not fully paid for had not yet been sold, and he therefore avoided, or at least delayed, making payment to the Creditor from the proceeds of sale. When the Creditor repossessed its collateral from the Debtor's inventory after the Debtor filed his Petition for Relief, it was discovered that 75 items having an invoice value of approximately Twenty-

Two Thousand Dollars ($22,000.00) were missing from the Debtor's inventory. These 75 items had been sold by the Debtor, but the fact of sale had been concealed through the switching of inventory tags.

The Debtor has never specifically accounted for the proceeds of sale of the 75 missing items, although it is generally agreed that the Debtor would normally deposit proceeds of sale in his business bank account. At the time the Petition was filed, the Debtor owed the Creditor Sixty-One Thousand, Three Hundred Four & 27/100 Dollars ($61,304.27). The Creditor repossessed merchandise and sold it at private sale for Forty-Two Thousand, Seven Hundred Thirty-Three & 69/100 Dollars ($42,733.69), which leaves the Creditor with an unsecured claim of Eighteen Thousand, Five Hundred Seventy & 58/100 Dollars ($18,570.58).

## DISCUSSION

The standard for granting summary judgment pursuant to F.Rule Civ.P. 56 (B.R. 7056) is a two-part test. Rule 56(c) provides that:

> [t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

All the material facts in this case have been admitted in the pleadings as set forth above. Therefore, the only issue remaining is whether either party is entitled to judgment as a matter of law.

The sole issue of law to be determined here is whether the Defendant's conduct constitutes conduct which would make the debt owed to this Creditor an exception to discharge under 11 U.S.C. Sec. 523(a)(4). That Section provides:

> A discharge under Section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> \*  \*  \*  \*  \*  \*

(4) For fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

It is clear that the element of "fiduciary capacity" refers only to "fraud or defalcation," and it need not be present where embezzlement is the exception to discharge relied upon. *Matter of Michel,* 74 B.R. 88, 90 (N.D.Ohio, 1986), *aff'g,* 74 B.R. 80 (Bankr.N.D.Ohio 1985). It is also clear that there is no question of larceny in this case, because the Debtor originally acquired possession of the merchandise in a lawful manner and with consent of the owner. The only remaining issue is embezzlement.

Various definitions of "embezzlement" have been suggested to the Court by the parties. The Creditor/Plaintiff asserts that the appropriate definition is found in federal case law interpreting 11 U.S.C. Sec. 523(a)(4):

The definition of embezzlement established by the case law is the fraudulent appropriation of property possession of which was obtained lawfully.... The elements which must be so proven are (a) that debtor appropriated funds for his own benefit and (b) that he did so with fraudulent intent or deceit. *Michel,* 74 Bankr. at 90, *citing In re Epperson,* 45 Bankr. 708, 711 (Bankr.E.D.Tenn.1985); *In re James,* 42 Bankr. 265, 266 (Bankr. W.D.Ky.1984).

The Debtor looks to the comprehensive Ohio statute on theft for the elements of embezzlement. This statute provides:

A person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways: (1) Without the consent of the owner or person authorized to give consent; (2) beyond the scope of the express or implied consent of the owner or person authorized to give consent; (3) by deception.... Ohio Rev.Code Sec. 2913.02.

As the Debtor suggests, this section was intended to include embezzlement. The legislative history to this section indicates: "... conversion or embezzlement now constitutes theft, since the section defines theft as exerting control (as opposed to initially gaining control over property or services) beyond the scope of the owner's consent ..." Committee Comment to H511, Ohio Rev.Code Ann. Sec. 2913.02 (Anderson 1987), p. 155.

■ Regardless of which definition is employed, the result is the same. The basic elements of embezzlement are present in both the common law and statutory definitions urged on us by the parties. These elements are that property is acquired lawfully with the consent of the owner, the property is appropriated for the embezzler's own use, and some form of fraud or deceit is employed. Although expressed differently, various definitions of embezzlement include these elements. In 1895, the United States Supreme Court defined embezzlement as the "fraudulent appropriation of property by a person to whom such property has been lawfully entrusted or into whose hands it has lawfully come." *Moore v. United States,* 160 U.S. 268, 16 S.Ct. 294, 40 L.Ed. 422 (1895), *quoted in James,* 42 B.R. at 266, n. 3.

■ Embezzlement necessarily involves some form of fraud or deceit. *Michel,* 74 B.R. at 90; *James,* 42 B.R. at 267; *In re Graziano,* 35 B.R. 589, 595 (Bankr.E.D.N. Y.1983). As the Creditor suggests in its Motion, the Debtor's conduct would not have constituted embezzlement if he simply appropriated the proceeds of sale for his own purposes and then disclosed the fact of sale and his inability to pay the Creditor at the monthly inventory check. In this hypothetical situation, the Debtor would have been in violation of the Security Agreement and possibly in violation of Ohio's theft statute, but not of the embezzlement statute.

■ Having determined the elements necessary for embezzlement under 11 U.S.C. Sec. 523(a)(4), we find they are present in this case. The Debtor was clearly under an obligation to pay the balance of the wholesale price to the Creditor from *the proceeds of sale of any piece of merchandise* subject to the Creditor's security interest. The parties have agreed this pro-

vision was part of the Security Agreement. Any use of the proceeds contrary to that provided for in the Security Agreement was beyond the Debtor's scope of authority and without the consent of the Creditor. Such use occurred in the present case. Despite the fact that the Debtor may have deposited the proceeds of sale in a business bank account and used these funds for business purposes, that use, however well-intentioned, was without the consent of the Creditor.

There is clearly deceit in the present case, as well. Through the Stipulation of Facts, the Debtor has admitted that he changed inventory tags on certain items of merchandise in order to create the appearance that items which had actually been sold were still held in inventory. By deceiving the Creditor in this manner, the Debtor was able to use the proceeds of sale for his own purposes, and he was able to continue operating under the Security Agreement to deceive the Creditor again.

■ The burden of persuasion which must be met by the Creditor/Plaintiff is that of "clear and convincing evidence." *Michel,* 74 B.R. at 90; *Epperson,* 45 B.R. at 711; *In re Storms,* 28 B.R. 761, 765 (Bankr.E.D.N.C.1983). Although the origin of this standard is not clear, it is true that "[t]he case law is legion that claims for nondischargeability under ... Sec. 523(a)(4) must be proved by clear and convincing evidence." *Kwiat v. Doucette,* 81 B.R. 184, 189 (D.Mass.1987) *citing In re Taylor,* 58 B.R. 849, 852 (Bankr.E.D.Va.1986). Presumably, the standard arose out of the close connection between embezzlement under Sec. 523(a)(4) and fraud under Sec. 523(a)(2). Clear and convincing evidence is often required in cases involving actual fraud. *See generally,* 37 Am.Jur.2d, *Fraud and Deceit,* Sec. 468 (1968).

The clear and convincing standard has been met by the Creditor/Plaintiff in the present case. There was no need to interpret testimonial evidence, as all of the factual evidence was presented through stipulations which were, for the most part, clear and unambiguous. The stipulations were flawed only by the vagueness which is inherent in any document prepared by two parties with adverse interests. The facts as stipulated, together with the Motions submitted by the parties, leave the Court with no doubt that the Debtor's conduct constitutes embezzlement for purposes of 11 U.S.C. Sec. 523(a)(4). In so finding, we emphasize that no criminal or quasi-criminal finding is being made or suggested. Indeed, it appears from the evidence as a whole that Debtor had no criminal intent but rather believed that substituting fully paid for items for sold items fully protected the Creditor. Additionally, it appears Debtor used none of the funds for personal benefits.

■ The entire unsecured claim of the Creditor, Eighteen Thousand, Five Hundred Seventy & 58/100 Dollars ($18,570.58), is an exception to the Discharge granted to the Debtor in this case. Because it would be difficult, if not impossible, to ascertain in what amounts and at what times the Debtor appropriated funds for his business use, the Creditor simply seeks interest on its claim from July 18, 1988, the date of the filing of the Petition. This Court agrees that such a claim is reasonable, and it is allowed. The Creditor also seeks attorney's fees, relying on a provision of the Security Agreement. That Agreement provides that the Debtor "agrees to pay reasonable attorney's fees as allowed by law." The Creditor has not provided any support, either from state law or the Bankruptcy Code, for the allowance of attorney's fees. If the Creditor claims fees are owed "as allowed by law," it should have demonstrated how the law allows the fees it has requested. Because this proof has not been offered, attorney's fees are not awarded to the Creditor in this case.

An appropriate Order shall issue.