**In re David M. BIRT, Mary O. Birt, Debtors.**

**Blaine F. HEETER, et al., Plaintiffs,**

v.

**David M. BIRT, Defendant.**

**Bankruptcy No. 93–31967.
Adv. No. 93–3286.**

United States Bankruptcy Court,
N.D. Ohio,
Western Division.

Oct. 14, 1994.

H. Charles Wagner, Dayton, OH, Joyce A. Rollert, Vandalia, OH, for plaintiffs.

William White, Lima, OH, for defendant.

## OPINION AND ORDER EXCEPTING DEBT FROM DISCHARGE

WALTER J. KRASNIEWSKI, Bankruptcy Judge.

This matter is before the Court upon the adversary complaint (the "Complaint") of Blaine F. Heeter ("BFH"), Frances Heeter ("Frances") and Blaine Heeter, II ("BH2") to except the debt of David M. Birt ("Birt") from discharge under 11 U.S.C. § 523(a). The Court finds that the Complaint is well taken and that Birt is liable to BFH and Frances in the amount of $10,000.00 for Birt's debt which arose from his receipt of a check in the amount of $10,000.00 from BFH and Frances on July 27, 1990 (the "Check"). The Court further finds that Birt's debt to BFH and Frances arising from Birt's receipt of the Check is nondischargeable pursuant to § 523(a)(2)(A) of the Bankruptcy Code.

### FACTS

The debtor Birt filed a petition under chapter 7 of title 11 in 1993.

The Heeters seek to except from discharge Birt's obligation based on Birt's alleged breach of a written contract entered into by BFH and Birt on June 26, 1990 (the "Written Contract") and Birt's alleged breach of an oral contract entered into by BH2 and Birt subsequent to the Written Contract. The Heeters further seek to except from discharge Birt's debt arising from his fraudulent representations in obtaining the Check from Frances and BFH. BFH, Frances and BH2 have also alleged that Birt converted the Check and wrongfully misappropriated the Check for his own use.

BFH owns the house located at 11151 Heeter Rd., Brookeville, Ohio (the "Home"). BFH's ancestors built the Home and members of the Heeter family have occupied the Home for approximately 170 years. BFH's son BF2 and BF2's wife Celeste Heeter ("Celeste") have occupied the Home since 1989 as tenants along with their two sons.

### The Written Contract

Preliminarily, the Court notes that the parties have stipulated that Birt held himself out to the Heeters as a person who performed "workmanlike work" in the restoration of old homes. The parties have further stipulated that Birt had extensive experience in, and was familiar with, the restoration of older homes. Birt testified that he has been employed in the masonry field for over 20 years.

BFH entered into the Written Contract with Birt on June 26, 1990 in order to restore the Home. Birt prepared the Written Contract in accordance with his prior negotiations with BF2.

Birt commenced performing restoration work at the Home several days prior to the date of the Written Contract. Celeste testified that Birt employed as many as two other workers in performing the Written Contract. Birt and his employees, his brother and his cousin, ceased performance under the Written Contract prior to its completion in late September, 1990.

Under the Written Contract, Birt agreed to perform the following tasks in exchange for $21,725.00:

- #1 Complete Masonry Restoration
- #2 Roof R & R
- #3 Window Seals (sic)
- #4 Window I beam over large window
- #5 Cement work Porch & sidewalk
- #6 Porch Posts

#7 Hill removal, waterproof stone & drains

#8 Black coal bein (sic) removal.

*See* Plaintiff's Exhibit 35.

Celeste testified that Birt started all of the tasks under the Written Contract at the same time.

The masonry restoration on the Home which Birt undertook to perform under the terms of the Written Contract included removal of part of the existing mortar between the bricks in the Home and replacement of such mortar with new mortar.

BH2 testified that Birt failed to complete the masonry restoration on the Home. BH2 also testified that the masonry work which Birt did complete on the Home was not completed in a workmanlike fashion.

BH2 testified that Birt failed to complete the "Roof R & R" as contemplated by the Written Contract which task encompassed removal of the Home's metal roof and replacement of such roof with shingles. BH2 testified that Birt removed the existing steel roof on the Home pursuant to the Contract. However, BH2 testified that Birt left the Home exposed to the elements because he failed to install shingles on the roof in accordance with the Written Contract.

BH2 testified that Birt failed to complete the window sills in accordance with the Contract. Specifically, BH2 testified that Birt failed to finish work on four windowsills as required by the Written Contract. BH2 further testified that, as a result of Birt's work on the Home's windowsills, the Heeters were unable to close the windows on the Home, thus leaving the Home exposed to the elements.

BH2 also testified that Birt failed to complete work on the "Window I beam over large window" as required by the Written Contract.

In addition, BH2 testified that Birt failed to complete the cement work on the Home's porch and sidewalk as specified by the Written Contract. BH2 testified that Birt demolished a sidewalk pursuant to the Contract. Nonetheless, BH2 testified that Birt did not replace the sidewalk as contemplated by the Written Contract.

BH2 testified that Birt failed to complete his undertaking with respect to the porch posts as required by the Written Contract.

Although the Contract contemplated "Hill removal", BH2 testified that Birt did not remove a hill which was located on the property to the depth contemplated by the Written Contract. Birt testified that he completed this task as required by the Written Contract.

BH2 testified that Birt did complete the removal of a coal bin as the parties had agreed in the Contract.

BH2 testified that, in addition to failing to complete his obligations under the Written Contract, Birt inflicted damage on the Home and the appurtenant real estate. First, BH2 testified that Birt had left electrical wires hanging in a haphazard manner inside the entrance to the Home. Second, BH2 testified that Birt had left an "open trench" of an approximate two foot depth along the foundation of the Home at the time that he ceased work on the Home. BH2 testified that water seeped into the Home as a result of this open trench. Third, BH2 testified that Birt had "loosened" a number of lightning rods which had previously been attached to the roof of the Home. Fourth, as previously noted, BH2 testified that the Heeters were unable to close the windows on the Home as a result of Birt's work on the windowsills at the Home. Fifth, BH2 testified that Birt had removed a "footplate" beneath one of the doors at the Home, leaving an opening in the exterior of the Home. BH2 testified that this resulted in the interior of the Home being exposed to the elements. Sixth, as previously noted, BH2 testified that Birt left the roof in a state of disrepair which left the Home exposed to the elements.

Frances testified that she wrote the checks which paid for the Heeters' restoration of the Home.

BFH and Frances made payments to Birt under the Written Contract in 1990 of $500.00, $5,500.00, $3,000.00, $3,000.00 and $3,000.00 on June 28, July, 5, July 13, July 27 and August 10, respectively.

Birt acknowledged that he had failed to complete a number of his obligations under the Contract. However, his testimony indicated that he substantially completed the Written Contract and performed a number of "extras" which were unforeseen at the time that the parties entered into the Written Contract.

Birt acknowledged that he was aware that the Heeters' budget for completing the Home was limited at the time that he executed the Written Contract and that the Heeters had offered to perform certain tasks in order to reduce their total expenses for restoration of the Home.

**The Oral Contract**

BH2 testified that Birt promised to install 26 Enco windows, 3 doors, soffits and spouting at the House in exchange for $10,000.00 (the "Oral Contract"). The Heeters also maintain that Birt offered several other inducements in order to obtain this additional work.

BH2 testified that, after consultation with his friend Michael Van Horn and prior to consulting with Birt, he decided to obtain Enco vinyl max E–800 windows with a "six over six grid" (the "Enco Windows") for the Home. Celeste also testified that she and BH2 had decided to obtain Enco Windows prior to consulting with Birt.

Both BH2 and Celeste testified that they informed Birt that they desired to have installed Enco Windows in the Home prior to the time when BH2 and Birt entered into the Oral contract.

Celeste testified that Birt expressed an interest in installing windows for them after learning that the they desired to replace their existing windows. Celeste testified that she provided Birt with the phone number and the address of a "contact person" at Sibco, the sole supplier of the Enco Windows in the area. BH2 also testified that the Enco Windows could be obtained at Sibco.

BH2 and Celeste testified that, although Birt informed them that he would subsequently reduce the Oral Contract to writing, Birt never provided them with a written contract which encompassed the parties agreement in the Oral Contract.

According to BH2, Birt provided the Heeters with several inducements in order to obtain the Oral Contract. BH2 testified that Birt promised to complete a portion of a sidewalk owned by the Heeters with "paver brick" if the Heeters awarded Birt the work on the Enco Windows. Celeste also testified that Birt promised to design the Home's front sidewalk and porch with "paver brick" in exchange for such additional work. BH2 also testified that Birt promised to restore the chimneys on the Home to more closely resemble the original state of the chimneys.

Although Birt acknowledged receipt of the Check, he denied the existence of an oral contract for windows, doors, soffits and spouting. Rather, Birt testified that the Check represented payment for certain "extras" which he had performed on the Home in light of unforeseen circumstances. In this connection, Birt testified that he was required to perform repairs to the superstructure of the roof on the Home which he had not contemplated when he drafted the Written Contract. Birt also testified that he was required to repair the brick structure which supported the window frames in the Home, another unforeseen condition.

Birt denied that he undertook to order windows for the Home. Birt testified that he never ordered windows for the Home because BH2 and Celeste could not decide which type of windows they wanted for the House.

BFH and BH2 both testified that they did not request that Birt perform work in addition to the items set forth in the Written Contract. Indeed, both BFH and BH2 testified that Birt never informed them that he was performing work that was not provided for in the Written Contract.

The parties have stipulated that Birt never ordered any windows. The parties have further stipulated that Birt never installed any windows at the Home.

**The Check**

The Heeters argued that the Check was issued to Birt pursuant to the Oral Contract between Birt and BH2.

BH2 testified that Birt informed him that Birt needed the Check forthwith so that he could order windows for the Home as soon as possible.

Frances testified that the Check bore the notation "paid in full for windows, doors, soffits and spouting" at the time that the Check was issued to Birt.

Birt testified that he was unaware of the notation contained on the Check indicating that the Check was for payment in full for windows, soffits, spouting and doors.

Frances testified that she paid the Check to the order of Birt, personally, rather than to "David M. Birt, Masonry" as set forth in the Written Contract pursuant to Birt's request. According to Frances, Birt requested that she make the Check payable to Birt personally rather than to "David M. Birt, Masonry" because he had encountered difficulty in attempting to cash checks made payable to "David M. Birt, Masonry".

A notation on the Written Contract in Birt's handwriting indicates "rec. 10,000 on for Windows DB."

The parties have stipulated that Birt did not use the Check to purchase windows. The parties have also stipulated that Birt never returned any portion of the Check to the Heeters.

The parties have also stipulated that Birt did not have a bank account during the time that he performed restoration work on the Home.

### DISCUSSION

#### Applicable Statute

Section 523(a) provides, in relevant part that:

[a] discharge under section 727 ... of this title does not discharge an individual debtor from any debt—

... (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition;

... (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny;

... (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]

#### Burden of Proof

The Heeters bear the burden of proof on their Complaint under § 523(a) by the preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

#### Dischargeability Under 11 U.S.C. § 523(a)(2)(A)

■ The Court finds that Birt's debt owed to BFH and Frances for the Check should be excepted from discharge under § 523(a)(2)(A).

The Sixth Circuit has interpreted 11 U.S.C. § 523(a)(2)(A) as requiring a creditor to prove:

that the debtor obtained money[,] [property, services, or an extension, renewal or refinancing of credit,] through a material misrepresentation that at the time the Debtor knew was false or made with gross recklessness as to its truth. The creditor must also prove the debtor's intent to deceive. Moreover, the creditor must prove that it reasonably relied on the false representation and that its reliance was the proximate cause of the loss.

*Coman v. Phillips (In re Phillips)*, 804 F.2d 930, 932 (6th Cir.1986) (citations omitted); *c.f. BancBoston Mortgage Corp. v. Ledford (In re Ledford)*, 970 F.2d 1556, 1559 n. 3 (6th Cir.1992), *cert. denied* — U.S. —, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993) (finding reasonable reliance but not deciding the issue of whether reasonable reliance requirement survived the Supreme Court's decision in *Grogan v. Garner*, 498 U.S. at 279, 111 S.Ct. at 655).

The Court finds that Birt induced Frances' payment of the Check by his false representation to BH2 and Celeste that he needed the Check to order the Enco Windows. *See Longo v. McLaren (In re McClaren)*, 3 F.3d 958, 963–64 (6th Cir.1993) (debt held nondischargeable under § 523(a)(2)(A) where debt-

or persuaded plaintiff to invest $200,000.00 in shopping center based on the promise that plaintiff's funds would be escrowed and used for purchase of shopping center); *Allison v. Roberts (In re Allison)*, 960 F.2d 481, 484 (5th Cir.1992) (debtor's representation that he would limit amount of first mortgages on properties in future found to be fraudulent where debtor had no intention of performing in accordance with representation at the time that such representation was made); *Rubin v. West (In re Rubin)*, 875 F.2d 755, 759 (9th Cir.1989) (promise made with no intent to perform constituted fraud); *c.f. United States v. O'Boyle*, 680 F.2d 34 (6th Cir.1982) (representations as to future intent made with the knowledge that such representations would not be performed represented fraud).

The Court credits the testimony of BH2 and Celeste that Birt made representations that he needed the Check to order the Enco Windows as soon as possible. Further, the Court credits Frances' testimony that the Check bore the notation "paid in full for windows, doors, soffits and spouting" at the time that she presented the Check to Birt. Frances' testimony as to the notation on the Check is supported by Birt's notation on the Written Contract which indicates "Rec. 10,-000 on for Windows D.B.".

The Court cannot credit Birt's testimony that he failed to realize the notation on the Check at the time that he received the Check. Such testimony is belied by his notation on the Written Contract.

■ The Court finds the fact that Birt never reduced the Oral Contract to writing to be probative as to his intent to defraud.

The fact that Birt specifically requested that Frances make the Check payable to Birt, rather than David M. Birt, Masonry further supports a finding of an intent to defraud.

Birt knew at the time that he made the above representations that they were false. Birt's testimony at trial leaves little doubt that he never intended to purchase the Enco Windows with the Check. Indeed, the Court can only conclude that Birt used the Check to compensate himself for certain "extras" which he assertedly performed in fulfilling his obligations under the Written Contract. *See In re McClaren*, 3 F.3d at 963–64 (finding that debtor's testimony as to his intended use of funds obtained from creditor indicated that debtor never intended to perform in accordance with representations to creditor); *In re Rubin*, 875 F.2d at 757–59 (facts belied debtor's assertion to creditors that creditors did not have time to obtain mortgage).

Significantly, Birt represented to BH2 and Celeste that he would further restore the chimneys on the Home and perform work on a sidewalk adjacent to the House if he was awarded the work on the windows.

The Court finds that Birt's misrepresentations were material as to the Heeters' decision to issue the Check.

The fact that Birt did not make misrepresentations with regard to the Enco Windows directly to Frances is insignificant. Birt made the misrepresentations with the intent to deceive BF2, Celeste, BFH and Frances. Frances actually relied on Birt's misrepresentations in issuing the Check to Birt. Moreover, Birt was aware that BFH and Frances were financing the restoration of the Home. *See Newsome v. Culp (In re Culp)*, 140 B.R. 1005, 1010 (Bankr.N.D.Okl.1992) (indirect misrepresentation supported finding of nondischargeability where debtor made misrepresentation with the intent to deceive those inquiring into debtor's corporate employer's financial condition); *Loyd v. Coyne (In re Coyne)*, 70 B.R. 560 (Bankr.E.D.Mo. 1987) (debt held nondischargeable under § 523(a)(2)(B) where creditor obtained false financial statement indirectly and relied thereon); *c.f. S.P. Investments Limited Partnership v. O'Connor (In re O'Connor)*, 145 B.R. 883, 892 (Bankr.W.D.Mich.1992) (noting that the fact that a creditor learns of false statement and relies on false statement is sufficient to support a determination of nondischargeability, irrespective of whether the false statement is made directly to creditor) (citation omitted).

■ The Court further concludes that Frances actually and reasonably relied upon Birt's misrepresentations in issuing the Check to Birt. "Assuming that a reasonableness requirement still exists after *Grogan v.*

*Garner,* the requirement merely prevents creditors from looking the other way in the face of facts that ought to raise suspicions." *BancBoston Mortgage Corp. v. Ledford (In re Ledford),* 970 F.2d 1556, 1560 (6th Cir. 1992). In making this determination, the Court finds significant the fact that Frances issued the Check to Birt in furtherance of the Heeters' personal, family objectives rather than for commercial reasons. *C.f. In re Phillips,* 804 F.2d at 933 (finding cases examining reasonable reliance in the context of commercial loans inapposite to analysis of transaction involving personal loan between individuals). Further, the Court finds that the prior course of dealings between Birt and BFH, Frances, BH2 and Celeste militates in favor of a finding of reasonable reliance. *BancBoston Mortgage Corp. v. Ledford (In re Ledford),* 970 F.2d 1556, 1561 (6th Cir. 1992) (finding that bank reasonably relied on misrepresentations made by sophisticated borrower in light of past business dealings), *cert. denied,* — U.S. ——, 113 S.Ct. 1272, 122 L.Ed.2d 667 (1993). Lastly, the evidence adduced at trial did not indicate the existence of any "red flags" which would have rendered Frances' reliance on Birt's misrepresentations unreasonable under the circumstances. Therefore, Frances' reliance upon Birt's representations was not "so unreasonable as to negate any actual reliance". *In re Ledford,* 970 F.2d at 1560 (citation omitted).

■ Notwithstanding the nondischargeability of Birt's obligation to BFH and Frances for the Check, BFH and Frances have not demonstrated their entitlement to attorney fees incurred in prosecuting this action. The Court has not been provided with evidence that the Heeters were entitled to attorneys fees based on the terms of either the Written Contract or the Oral Contract. *C.f. Martin v. Bank of Germantown (In re Martin),* 761 F.2d 1163, 1167–68 (6th Cir.1985) (creditor entitled to attorneys fees based on contractual provision). Further, "[t]he Bankruptcy Code does not provide for allowance of attorney's fees and costs in connection with a dischargeability action except as provided in § 523(d)". *Pan–Western Life Ins. Co. v. Galbreath (In re Galbreath),* 112 B.R. 892, 906 (Bankr.S.D.Ohio 1990); *c.f. Pervey Electronics Corp. v. Sinchak (In re*

*Sinchak),* 109 B.R. 273, 277 (Bankr.N.D.Ohio 1990) (request for attorney fees denied where creditor failed to demonstrate entitlement to attorney fees under state law or the Bankruptcy Code). Moreover, the Court notes that even if an award of attorney fees were permitted under the Bankruptcy Code, the scant evidence presented by the BFH and Frances at trial failed to support their entitlement to such an award.

## Dischargeability Under 11 U.S.C. § 523(a)(4)

■ In order to demonstrate that Birt's use of the Check constituted an embezzlement, the Heeters were required to demonstrate " 'that [the creditor's] property [was] acquired lawfully with the consent of the owner, the property [was] appropriated for the embezzler's own use, and some form of fraud or deceit [was] involved.' " *Cavalear Ins. Agency, Inc. v. Rico (In re Rico),* 133 B.R. 880, 881 (Bankr.N.D.Ohio 1991) (quoting *In re Sinchak,* 109 B.R. 273, 276 (Bankr. N.D.Ohio 1990) (other citations omitted). The Check became Birt's property when Frances transferred the Check to him pursuant to the terms of the Oral Contract. Therefore, Birt's conduct in spending the Check did not constitute an embezzlement.

## Dischargeability Under 11 U.S.C. § 523(a)(6)

■ BFH, Frances and BH2 argue that Birt willfully and maliciously converted the Check.

Conversion is defined as the " 'unauthorized and wrongful exercise of dominion and control over another's personal property to the exclusion of or inconsistent with rights of owner.' " *Vulcan Coals, Inc. v. Howard,* 946 F.2d 1226, 1228 n. 1 (6th Cir.1991) (citing Black's Law Dictionary 332 (6th ed.1990)).

In view of the fact that Birt became the owner of the Check at the time he received the Check from Frances, his expenditure of the Check did not represent an act of conversion. *Compare Mace v. Mace (In re Mace),* 82 B.R. 864 (Bankr.S.D.Ohio 1987) (failure to pay prepetition arrearages in wife's vested share of military retirement fund awarded to

wife in divorce proceeding was willful and malicious conversion).

■ The Heeters also appeared to argue at trial that the Home and the adjacent real estate were damaged by Birt's negligent performance of his contractual obligations. The Court notes that the Complaint does not allege such a cause of action.

The Court further notes the Heeters did not provide any expert testimony as to the standard of workmanship which can be expected from a worker in Birt's field.

In addition, although the Heeters adduced evidence that the Home and the adjacent real estate were left in a damaged condition at the time when Birt ceased work on the Home, the Heeters failed to provide sufficient evidence that Birt was solely responsible for such damage.

■ Lastly, the Court finds it important to note that § 523(a)(6) primarily encompasses tortious conduct rather than breaches of contractual obligations. *Huntington Nat'l Bank v. Parton (In re Parton),* 137 B.R. 902, 907 (Bankr.S.D.Ohio 1991) (citation omitted). Although the evidence presented at trial lends ample support to the conclusion that Birt negligently damaged the Home, this evidence does not support a finding that the damage to the Home was perpetrated in a "malicious" manner.

In light of the foregoing, it is therefore

ORDERED that Birt be, and he hereby is, liable to BFH and Frances in the amount of $10,000.00 for the debt arising from Birt's receipt of the Check from BFH and Frances. It is further

ORDERED that Birt's debt to BFH and Frances arising from Birt's receipt of the Check be, and it hereby is, excepted from discharge.