**In re Charles Edward DOUGHERTY and Norine A. Dougherty, Debtors.**

**George RICHARD and Mary Ann Richard, Plaintiffs,**

v.

**Charles Edward DOUGHERTY and Norine A. Dougherty, Defendants.**

**Bankruptcy No. 93–11611–8P7.
Adv. No. 94–73.**

United States Bankruptcy Court, M.D. Florida, Tampa Division.

March 9, 1995.

Marsha Griffin Rydberg, Tampa, FL, for plaintiffs.

David W. Steen, Tampa, FL, for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 case and the matter under consideration is an Amended Complaint Objecting to Discharge and to Determine Dischargeability of Debt. The Complaint was filed by George Richard and Mary Ann Richard (Richards). The Amended Complaint initially contained eight counts. At the outset of the final evidentiary, the Court was advised that the Richards no longer desired to pursue their claims set forth in Counts V, VI, VII and VIII of the Amended Complaint, the Counts which contained the claims based on § 727(b). Based on this representation, the Court announced that it

will dismiss the claims set forth in those Counts. This left for consideration the claims set forth in Counts I, II, III and IV of the Amended Complaint. The claim in Count I is based upon § 523(a)(4) and alleges that the Debtors (Doughertys) committed fraud or defalcation while acting in a fiduciary capacity. The claim in Count II is based on § 523(a)(2)(A) and alleges that the Doughertys obtained property by false pretenses, false representations and actual fraud. The claim in Count III is based upon § 523(a)(4) and alleges that the Doughertys had appropriated property that had been entrusted to them or that had lawfully come into their hands (sic). The claim in Count IV is based upon § 523(a)(6) and alleges that the Doughertys willfully and maliciously caused injury to the Richards. Each of the claims asserted by the Richards relate to certain real property located at 5837 Memorial Highway, Tampa, Florida, (the Property) which had been jointly acquired by the Richards and the Doughertys.

The facts pertinent to this controversy as they appear from the stipulated facts and documents and the evidence presented at trial are as follows:

In 1983, a corporation known as Gulfcoast Brokers Group, Inc., (Gulfcoast) was formed under the laws of the State of Florida for the purpose of operating a real estate brokerage firm. Mr. and Mrs. Dougherty and Mrs. Richard each owned a one-third interest in this corporation. On September 28, 1984, Mr. and Mrs. Dougherty and Mr. and Mrs. Richard purchased the Property on Memorial Highway in order to house the real estate company and also for investment and rental purposes. The Deeds to the Property reflect that the transfer was made to "Charles E. Dougherty and wife, Norine A. Dougherty and George V. Richard and wife, Mary Ann Richard." (Pl's Exh. 3 & 4) It appears that each couple contributed $25,000.00 toward the purchase price for the Property. Mr. and Mrs. Dougherty and Mr. and Mrs. Richard each executed a Promissory Note in favor of Pan American Bank of Tampa in the amount of $131,000.00 representing the balance of the purchase price financed by the Bank. (Pl's Exh. 5) This Note was secured by a mortgage on the Property executed by the parties on September 28, 1984. (Pl's Exh. 6)

On September 19, 1984, the Doughertys and the Richards executed an Agreement which apparently was intended to set forth their relative rights with respect to ownership of the Property. (Pl's Exh. 8) The Agreement provides, *inter alia*, that the Doughertys and the Richards "have taken title as joint tenants (each having an undivided one-half interest therein)" in the Property. The Agreement then provides that:

1. The Property shall be held as tenants in common, with each couple to have the rights associated with that relationship under Florida law.

2. Each party agrees to indemnify the others for any liabilities of the Property resulting from the indemnifying party's actions.

3. In the event that either the Doughertys or the Richards wish to sell their interest in the Property, they must comply with the procedures contained in the Agreement, which essentially include a right of first refusal to the other party.

Finally, on November 2, 1984, a bank account was opened at Pan American Bank to be used for the banking services related to the Property. This account was entitled "Dougherty–Richard" and was designated as a "partnership" (sic) account. (Pl's Exh. 7) Mr. and Mrs. Dougherty and Mr. and Mrs. Richard were each authorized signatories on the account and two signatures were required for all transactions.

Gulfcoast occupied a portion of the Property, presumably as a paying tenant, and another portion of the Property was leased to a third party. In April of 1985, Mrs. Dougherty terminated Mrs. Richard's employment with Gulfcoast and requested that Mrs. Richard remove herself and her belongings from the premises. It appears that the parties then attempted an arrangement whereby the Doughertys were to write the checks necessary to pay the Property's expenses and then forward them to the Richards for the second signature required by the account. This arrangement was short-lived, however, and the Doughertys subsequently opened a new ac-

count for the Property at NCNB. Only the Doughertys were authorized signatories on this account. The NCNB account was eventually closed in late 1988 with the distribution of $1,840.00 to Mr. Dougherty as alleged compensation for his janitorial and accounting services.

No payments were made on the mortgage to Pan American for the months of August and September of 1987 and the mortgage fully matured by its own terms in October of 1987. The balance was not paid on maturity and no arrangements were made to extend or refinance the note and mortgage. Consequently, NCNB, as Pan American's successor-in-interest, commenced a foreclosure action against the Doughertys and the Richards in the Circuit Court in Hillsborough County, Florida, and obtained a Final Judgment of Foreclosure on March 15, 1988, in the amount of $145,396.35. (Pl's Exh. 17)

The foreclosure sale of the Property was scheduled for April 25, 1988. On that date, the Doughertys entered into a written Agreement with Harvey Schonbrun, as Trustee (Schonbrun). (Pl's Exh. 19) This Agreement, which was not disclosed to the Richards, states in part:

1. Schonbrun was to bid up to $180,000 for the Property at the foreclosure sale.

2. If Schonbrun was the successful purchaser at the sale, Dougherty was to pay Schonbrun the sum of $10,000.00 by May 25, 1988, as "reimbursement" for Schonbrun's fee.

3. If Schonbrun was the successful purchaser, Dougherty was to rent the Property from Schonbrun on a month-to-month basis.

4. Dougherty was to pay Schonbrun the amount that he bid at the foreclosure sale, plus an additional $50,000.00, on or before June 25, 1989. The Doughertys could either purchase the Property themselves for this sum or locate another purchaser for the Property.

It appears that Schonbrun, who is an attorney, entered into the Agreement as an arms-length transaction with the Doughertys, and that he had not engaged in any prior dealings with them. It further appears that his decision to enter the Agreement was profit-motivated, that no money was refunded to the Doughertys, and that he did not intend to preclude the Richards from bidding at the foreclosure sale.

Mr. Schonbrun, as Trustee, was in fact the successful bidder at the foreclosure sale with a bid in the amount of $148,300.00, and the Certificate of Title was issued to Schonbrun, as Trustee, on May 6, 1988. (Pl's Exh. 18) It is significant that the Richards had also made financial arrangements to purchase the Property and attended the foreclosure sale prepared to submit a bid, although they apparently elected not to participate at the last minute.

On March 22, 1989, the Doughertys purchased the Property from Schonbrun, "individually and as Trustee," in accordance with the Agreement. (Pl's Exh. 23) It appears that the purchase price paid by the Doughertys was $199,750.00. Also on March 22, 1989, the Doughertys sold the Property to Gregory and Timothee Mondor (Pl's Exh. 24). It appears that the purchase price paid to the Doughertys by the Mondors was approximately $310,000.00. In connection with this sale, the Mondors executed a Promissory Note in favor of the Doughertys in the amount of $30,000.00, together with a Purchase Money Mortgage securing the note. (Pl's Exh. 28) The Doughertys subsequently sold their interest in this note and mortgage on May 22, 1992, apparently for the sum of $15,500.00. (Pl's Exh. 30)

## I. SECTION 523(a)(4)—BREACH OF FIDUCIARY DUTY

The Richards contend that the Doughertys owed them a fiduciary duty with respect to the Property within the meaning of § 523(a)(4) of the Bankruptcy Code. The Richards claim that this fiduciary duty arises either because the Doughertys and the Richards were partners, or because they were tenants in common as to the Property. According to the Richards, either relationship is sufficient to satisfy the requirement of a fiduciary capacity under § 523(a)(4). The Richards claim that the Doughertys breached this duty by secretly acquiring the Property in their own names, through Mr. Schonbrun, to the exclusion of the Richards. They

claim, therefore, that they are entitled to one-half of the profits generated from the sale of the Property to the Mondors, and that this claim is nondischargeable under § 523(a)(4).

In opposition, the Doughertys contend that no partnership ever existed between the parties to create the fiduciary duty. According to the Doughertys, a tenancy in common is not sufficient to satisfy the standard for a fiduciary relationship under § 523(a)(4). Further, the Doughertys assert that any duty to their co-tenants had been negated because the parties were hostile to each other concerning their rights to the Property. Finally, the Doughertys claim that the arrangement with Mr. Schonbrun was an arms-length transaction and not merely a device to acquire sole ownership of the Property.

■ Section 523(a)(4) of the Bankruptcy Code provides that an individual debt is not dischargeable if it arises from fraud or defalcation of the Debtor while acting in a fiduciary capacity. In order to establish a cause of action under this section, it is generally held that an express or technical trust must have existed between the parties prior to the time of the alleged wrong. This express or technical trust may have been created either by virtue of a contract between the parties or by Statute. *In re Maynard,* 153 B.R. 933, 935 (Bankr.M.D.Fla.1993). It is not sufficient to assert that the fiduciary relationship existed as a result of a party's wrongful conduct.

■ In this case, the Richards contend that the Doughertys owed them a fiduciary duty because they acquired and owned the Property as partners, and that this partnership created the requisite fiduciary relationship under § 523(a)(4). First, this Court is satisfied that the record is insufficient to establish the existence of any partnership. It is clear from the transfer documents (Pl's Exh. 3 & 4), as well as the Agreement dated September 19, 1984, (Pl's Exh. 8) that the parties intended to acquire and manage the Property simply as tenants in common, and their conduct is entirely consistent with this co-tenancy. The Court finds no evidence of any intent to form a partnership with respect to the Property, and no indicia of a partnership, such as partnership tax returns, were

presented in this case. Further, although it has been held to the contrary under circumstances not present here, the partnership relationship is generally insufficient to create the fiduciary capacity required by § 523(a)(4). *In re Wiles,* 166 B.R. 975, 980 (Bankr.M.D.Fla.1994).

■ Next, the Richards assert that, even if the parties were merely tenants in common, such a relationship was sufficient to create a position of trust and confidence within the meaning of § 523(a)(4). This Court concludes as a matter of law that a tenancy in common does not constitute a contractual or statutory trust as required by § 523(a)(4). Consequently, Count I of the Amended Complaint should be dismissed, in that the Richards have failed to prove all of the elements necessary to establish that the Doughertys committed "fraud or defalcation while acting in a fiduciary capacity."

## II.  SECTION 523(a)(4)— EMBEZZLEMENT

The Richards contend that one-half of the rents paid by Gulfcoast Brokers Group, Inc., together with one-half of the funds that were in the bank account for the Property, constitute the Richards' property which had been entrusted to the Doughertys. They claim, therefore, that the Doughertys' appropriation of these sums is embezzlement within the meaning of § 523(a)(4) and that the claim is nondischargeable.

■ For purposes of § 523(a)(4), embezzlement is defined as "the fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *In re Kelley,* 84 B.R. 225, 231 (Bankr.M.D.Fla. 1988). In order to prevail, the creditor must prove that the Debtor appropriated the property with fraudulent intent or deceit. *In re Birt,* 173 B.R. 346, 353 (Bankr.N.D. Ohio 1994); *In re Pawlinski,* 170 B.R. 380, 390 (Bankr.N.D.Ill.1994). Further, it is fundamental that one cannot embezzle one's own property, or property in which he himself has an ownership interest. *Hardesty v. Johnson,* 126 B.R. 343, 346 (E.D.Mo.1991).

■ The Richards have failed to establish any claim under § 523(a)(4) for embezzlement. There is no evidence that the Richards ever delivered any property or entrusted any specific funds to the Doughertys. The Richards base their claim under this theory solely on the existence of a joint bank account and the payment of rent by a tenant of the jointly owned Property. There was no specific entrustment of any particular funds other than the ordinary business transactions arising from the co-ownership of the Property, and there was no agreement between the parties that any portion of the funds be segregated or designated as the Richards' property. See *In re Kelley*, 84 B.R. at 231. Absent any entrustment by the Richards of their money to the Doughertys, this Court must conclude that the Richards failed to prove a claim for embezzlement, and Count III of the Amended Complaint should therefore be dismissed.

### III. SECTION 523(a)(6)—WILLFUL AND MALICIOUS INJURY

The Richards contend that the conduct of the Doughertys amounts to a conversion of their property. They claim that the real estate had been liquidated and turned into cash, one-half of which belonged to the Richards, and that the Doughertys converted the proceeds of the liquidation. They assert, therefore, that their claim for 50% of the proceeds is not dischargeable under § 523(a)(6).

■ Section 523(a)(6) of the Bankruptcy Code provides that a debt is not dischargeable if it is a debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." The exception to discharge contained in § 523(a)(6) includes a claim arising from conversion. Conversion is defined as the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the alternative or exclusion of the owner's rights. *In re Duncan*, 162 B.R. 905, 910 (Bankr. M.D.Fla.1993). This Court consistently has held that the conversion of another's property without his knowledge or consent, done intentionally and without justification or excuse, to the other's injury, is a willful and malicious injury within the meaning of § 523(a)(6). *In re Hyers*, 70 B.R. 764 (Bankr.M.D.Fla.1987).

■ In this case, it is clear that the Doughertys knew that the Richards claimed one-half of the Property and the proceeds of the Property by virtue of their co-ownership, which is not disputed. It is also clear that the Doughertys collected the rent generated from the Property, as well as the proceeds from the sale of the Property, and failed to account to the Richards with respect to their one-half interest in such proceeds. Next, it is clear that the Richards never authorized or consented to the Doughertys' complete and permanent assumption of ownership over the proceeds. Finally, this Court finds that the Doughertys' actions were deliberate and intentional, as evidenced by their entire pattern of conduct commencing with the closing of the joint account and the establishment of the new bank account at NCNB in their own names, continuing with the secret agreement with Schonbrun to bid on the Property at the foreclosure sale, and culminating in their ultimate re-purchase and re-sale of the Property.

Based on the foregoing, the Court concludes that the Doughertys' conduct amounts to a conversion of the Richards' property, that such conversion constitutes a willful and malicious injury within the meaning of § 523(a)(6), and that the claim asserted by the Richards should therefore be determined to be nondischargeable.

### IV. SECTION 523(a)(2)(A)—FRAUD

The Richards contend that the Doughertys orchestrated a scheme of deceit whereby they secretly acquired ownership of the Property, to the exclusion of the Richards, through the mechanism of an undisclosed arrangement with a third party bidder at the foreclosure sale. The Doughertys then sold the Property and failed to account to the Richards for their interest in the proceeds. The Richards claim that the Doughertys conduct was fraudulent within the meaning of § 523(a)(2)(A) and that their claim for one-half of the proceeds is therefore nondischargeable.

Section 523(a)(2)(A) provides that a claim is not dischargeable if it is a debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

(A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

In order to prevail under this section, a claimant must prove that (1) the debtor obtained property by means of a false representation which the debtor made either knowing of its falsity or in reckless disregard of its truthfulness; (2) the debtor intended to deceive the creditor; (3) the creditor relied on the misrepresentation; and (4) the creditor's reliance was reasonable. *In re Burgess,* 955 F.2d 134, 140 (1st Cir.1992). In other words, the debtor himself must have obtained the money or property and he must have received it from the claimant. *In re Bilzerian,* 162 B.R. 583, 589 (Bankr.M.D.Fla. 1993).

In this case, the Richards have failed to establish a claim under § 523(a)(2)(A). The Richards did not prove by a preponderance of the evidence that the Doughertys concocted and preplanned a scheme to obtain property or money of the Richards. The evidence shows, for example, that the foreclosure action was legitimately commenced by NCNB after the mortgage was in default. Further, there is no proof that the Doughertys had any previous relationship with Mr. Schonbrun, and their agreement with him appears to be an arms-length business transaction. Most significantly, the Richards were fully aware of the foreclosure sale of the Property, attended the sale, and had an equal opportunity to purchase the Property at the sale. There is some evidence that the Richards had even made financial arrangements to purchase the Property at the time that they attended the sale. Based on the foregoing, this Court is satisfied that the evidence in this case is wholly insufficient to establish any preconceived plan on the part of the Doughertys to obtain any property of the Richards as a result of their actions. The Richards did not prove that the Doughertys' conduct was fraudulent within the meaning of § 523(a)(2)(A), and Count II of the Amended Complaint should therefore be dismissed.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Counts V, VI, VII and VIII of the Amended Complaint Objecting to Discharge of Debtors and to Determine Dischargeability of Debt are hereby dismissed. It is further

ORDERED, ADJUDGED AND DECREED that Counts I, II and III of the Amended Complaint are hereby dismissed. It is further

ORDERED, ADJUDGED AND DECREED that the debt asserted in Count IV of the Amended Complaint is hereby determined to be nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code.

A separate Final Judgment will be entered in accordance with the foregoing.

DONE AND ORDERED.