# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

_____

No. 11-6039

_____

In re:                                            *
                                                  *
Jeffrey Scott Unterreiner;                        *
Lisa Marie Unterreiner,                           *
                                                  *
        Debtors.                                  *
                                                  *
The Samuel J. Temperato                           *
Revocable Trust,                                  *   Appeal from the United States
                                                  *   Bankruptcy Court for the
        Plaintiff - Appellee,                     *   Eastern District of Missouri
                                                  *
               v.                                 *
                                                  *
Jeffrey Scott Unterreiner;                        *
Lisa Marie Unterreiner,                           *
                                                  *
        Defendants - Appellants.                  *

_____

Submitted: October 27, 2011
Filed: November 18, 2011

_____

Before KRESSEL, Chief Judge, FEDERMAN, and SALADINO, Bankruptcy
Judges.

_____

SALADINO, Bankruptcy Judge.

This is an appeal by defendants, Jeffrey and Lisa Unterreiner, from an order and judgment of the bankruptcy court dated May 25, 2011, granting summary judgment on plaintiff's complaint to determine dischargeability pursuant to 11 U.S.C. § 523(a)(2)(B). For the reasons that follow, we REVERSE and REMAND.

## STANDARD OF REVIEW

We review a bankruptcy court's grant of summary judgment *de novo, Mwesigwa v. DAP, Inc.*, 637 F.3d 884, 887 (8th Cir. 2011) (citing *Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010)). When an appellate court reviews a trial court's entry of summary judgment *de novo*, it uses the same standard applied by the trial court pursuant to Federal Rule of Civil Procedure 56(c). *Bremer Bank v. John Hancock Life Ins. Co.*, 601 F.3d 824, 829 (8th Cir. 2010). Under Rule 56(c), summary judgment is proper if the pleadings, affidavits and other evidence show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.

## FACTUAL BACKGROUND[1]

Defendant Jeffrey Unterreiner and an individual named Edward P. Radetic were the sole shareholders of King William Management, Inc. ("King William"), an entity that owned and operated at least three Dairy Queen restaurants. One of the restaurants was located in Jackson, Missouri, and the other two restaurants were located in Cape Girardeau, Missouri. King William operated the restaurants under a franchise agreement with Dairy Queen of Greater St. Louis, Missouri, Inc., now known as JoChuck, Inc. ("DQSTL"). Under the terms of the franchise agreement, King William is obligated to pay a percentage of sales to DQSTL.

---

[1]For purposes of the summary judgment motion, there were no disputes as to the facts discussed in this section.

DQSTL is owned by the plaintiff, The Samuel J. Temperato Revocable Trust ("Trust"). Crest Oelke is the trustee of the Trust and is apparently the individual who has acted on behalf of the Trust and DQSTL at all relevant times.

By December 2005, King William was experiencing extreme financial difficulties. It was unable to make payroll or adequately supply its restaurants, and also had become delinquent in payment of royalties due to DQSTL under the franchise agreement.

On December 22, 2005, Cass Commercial Bank ("Bank") made a loan in the amount of $235,000.00 to King William as borrower. Mr. and Mrs. Unterreiner, Mr. Radetic, and Mr. Radetic's spouse personally guaranteed the note. The loan documents also included a security agreement executed by King William, as borrower, and Mr. and Mrs. Unterreiner and Mr. and Mrs. Radetic, as guarantors, which granted the Bank a security interest in "All Business Assets located at 1036 N. Sprigg Street, Cape Girardeau, MO 63701 and 31 S. Kingshighway, Cape Girardeau, MO 63703."

Prior to December 2005, Mr. and Mrs. Unterreiner had never heard of the Bank nor had they or King William ever done business with the Bank. Mr. and Mrs. Unterreiner did not submit any documents to the Bank, to DQSTL, or to the Trust with regard to the loan. Further, prior to granting the loan, the Bank representative handling the loan transaction did not speak with Mr. or Mrs. Unterreiner, nor did any Bank representative inspect the collateral identified in the security agreement. Apparently, Crest Oelke had a pre-existing relationship with the Bank and had arranged for it to make the loan to King William.

Although Mr. and Mrs. Unterreiner were unaware of it at the time, the Bank also required DQSTL to guarantee King William's obligations under the loan. The Bank also held a pre-existing blanket guaranty from the Trust under the terms of

3

which the Trust guaranteed all obligations of DQSTL to the Bank. Mr. and Mrs. Unterreiner had never heard of the Trust and had no knowledge about any liability it may have had to the Bank.

When the Bank disbursed the loan proceeds in the amount of $235,000.00, it disbursed the funds to DQSTL. DQSTL retained $64,924.11 in partial satisfaction of the debt owed to it by King William under the franchise agreement and remitted the remainder to King William to use for operations.

Roughly one year after making the loan, the Bank learned from Mr. Unterreiner that at the time the security agreement was executed, the vast majority of the business assets located in the Cape Girardeau restaurants were owned by a separate entity, and not by King William or the individuals. Mr. Unterreiner is an accountant with more than 18 years of experience and he served as the accountant for King William. The King William 2004 tax return expressly showed that a separate entity, "AD Properties," owned the equipment located in the Cape Girardeau restaurants.

King William was unable to repay the loan and the Bank pursued Mr. and Mrs. Unterreiner on their guaranty. Subsequently, Mr. and Mrs. Unterreiner and the Bank settled their differences in consideration of a payment of $20,000.00 and the Bank executed a Release. The Release was made by Cass Commercial Bank "and on behalf of its agents, successors, assigns, and anybody else who could make a claim through Cass Commercial Bank . . . ." It released Mr. and Mrs. Unterreiner "from any and all claims, demands, causes of action, damages, or suits at law or equity of whatsoever kind that could be made by the releasing party, and any way related to or growing out of" the December 22, 2005, loan and guaranty agreements. The Release is dated June 20, 2008.

The Bank subsequently made a demand upon the Trust for payment of the outstanding balance of the note. The Trust and DQSTL settled all obligations to the Bank in exchange for a payment from a related entity in the amount of $185,000.00.

## PROCEDURAL BACKGROUND

On October 31, 2008, the Trust brought this adversary proceeding against Mr. and Mrs. Unterreiner asserting that they knowingly misrepresented which entity owned the assets pledged as collateral for the loan in the security agreement and that this misrepresentation was material to DQSTL and thus the Trust's decision to guarantee the loan.

Mr. and Mrs. Unterreiner assert that they did not intentionally or fraudulently mislead DQSTL, the Trust, or any other party. They assert that they did not read the security agreement before signing it, had no knowledge of the Trust when they executed the security agreement, and did not know that DQSTL was required to guarantee the loan by the Bank. Mr. and Mrs. Unterreiner further argue that any liability related to the loan was extinguished by the Release.

The adversary proceeding was submitted to the court on a motion for summary judgment filed by the Trust. The bankruptcy court granted the motion for summary judgment, made findings of fact and conclusions of law, and entered an order holding "Jeffrey Scott Unterreiner and Lisa Marie Unterreiner's obligation to Plaintiff is nondischargeable . . . ."

## DISCUSSION

Mr. and Mrs. Unterreiner contend that the bankruptcy court erred in granting summary judgment to the Trust because there are genuine issues of material fact with respect to the required elements of 11 U.S.C. § 523(a)(2)(B).

5

Section 523(a)(2)(B) excludes a debt from discharge:

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by –
> . . .
> (B) use of a statement in writing –
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive[.]

The bankruptcy court determined that when DQSTL agreed to guarantee the loan, it did so in reliance on the security agreement, which contained materially false statements regarding the pledged collateral. The bankruptcy court further found that when Mr. Unterreiner signed the security agreement he adopted the false statements contained therein as his own and made the false statements with the intent to deceive. The bankruptcy court did not make any similar findings with regard to Mrs. Unterreiner. Finally, the bankruptcy court found that DQSTL's reliance on the security agreement was reasonable and that it was reasonable for the Trust to rely on the statements made in the security agreement.

We begin our *de novo* review by examining the elements of 11 U.S.C. § 523(a)(2)(B). To except a debt from discharge under 11 U.S.C. § 523(a)(2)(B), a creditor must prove, by a preponderance of the evidence, that the debtor obtained money by (1) use of a statement in writing that was materially false; (2) that pertained to his or his business's financial condition; (3) on which the plaintiff reasonably relied; and (4) that the debtor made with the intent to deceive the plaintiff. *Jacobus*

6

*v. Binns (In re Binns)*, 328 B.R. 126, 129 (B.A.P. 8th Cir. 2005); *Northland Nat'l Bank v. Lindsey (In re Lindsey)*, 443 B.R. 808, 813 (B.A.P. 8th Cir. 2011).

Mr. and Mrs. Unterreiner assert that genuine issues of material fact exist with regard to most of the elements of § 523(a)(2)(B) – including whether the false statements in the security agreement were "material"; whether the security agreement constitutes a writing regarding financial condition; whether Mr. and Mrs. Unterreiner intended to deceive the Trust; whether the Trust reasonably relied on the financial statements; and whether the Trust is a creditor to whom Mr. and Mrs. Unterreiner are liable.

We need not address all of those assertions because the Trust failed to show that it is entitled to judgment as a matter of law under the plain language of the statute. Specifically, the Trust has not met several statutory requirements. To succeed in having a debt excepted from discharge under § 523(a)(2), the creditor is required to prove that the debtors obtained money, property, services or an extension, renewal or refinancing of credit from it at the time of the misrepresentation. *Marcusen v. Glen (In re Glen)*, 639 F.3d 530, 533 (8th Cir. 2011) (*citing In re Dougherty,* 179 B.R. 316, 322 (Bankr. M.D. Fla. 1995) ("In other words, the debtor himself must have obtained the money or property and he must have received it from the claimant.")).[2] The representations in the security agreement were made to the Bank, not to the Trust, and the loan was made by the Bank, not by the Trust. Simply stated, Mr. and Mrs. Unterreiner did not receive any money or property from the Trust concurrent with the representation.

---

[2]Although *Glen* involved § 523(a)(2)(A), and not § 523(a)(2)(B), both sections share the requirement under subsection (2) that the debt be for "money, property, services or an extension, renewal, or refinancing of credit."

The Trust argues that as owner of DQSTL, it would not have executed the guaranty by DQSTL of the loan to King William if it had known King William did not own the assets listed in the security agreement. So, in effect, the Trust is saying that Mr. and Mrs. Unterreiner did obtain something from it – the guaranty of DQSTL – as a result of the misrepresentation. DQSTL, however, is not the plaintiff nor is it a party to this adversary proceeding. DQSTL and the Trust are separate and distinct entities. Federal Rule of Civil Procedure 17(a), via Federal Rule of Bankruptcy Procedure 7017, requires that a plaintiff "actually possess, under the substantive law, the right sought to be enforced." *Curtis Lumber Co. v. La. Pac. Corp.*, 618 F.3d 762, 771 (8th Cir. 2010) (quoting *United HealthCare Corp. v. Am. Trade Ins. Co., Ltd.*, 88 F.3d 563, 569 (8th Cir. 1996)). Mr. and Mrs. Unterreiner did not obtain anything from the Trust.

Even if the guaranty by DQSTL could be considered something that Mr. and Mrs. Unterreiner obtained from the Trust, the Trust has also failed to meet the statutory requirement that it "reasonably relied" on the false statements in the security agreement.[3] It is undisputed that the Trust's liability to the Bank stems from its own guaranty of all obligations of DQSTL, which guaranty was dated years prior to the December 22, 2005, security agreement signed by Mr. and Mrs. Unterreiner. The Trust did not execute a new guaranty when the Bank made the loan to King William. Since the Trust's guaranty was already in existence, it could not possibly have relied on the misrepresentations in the security agreement. The Trust guaranteed the obligations of DQSTL long before the misrepresentations took place and not as a result of the misrepresentations.

---

[3]We also have serious doubts, but need not decide, whether a security agreement qualifies as a "statement . . . respecting the debtor's . . . financial condition."

## DECISION

Since the Trust is unable to meet the statutory requirements to hold a debt non-dischargeable under 11 U.S.C. § 523(a)(2)(B), the decision of the bankruptcy court is REVERSED AND REMANDED with instructions to enter judgment for the defendants.